[Cite as *State v. Bertuzzi*, 2025-Ohio-329.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

RUSSELL BERTUZZI,

    DEFENDANT-APPELLANT.

CASE NO. 9-24-12

O P I N I O N

---

**Appeal from Marion County Common Pleas Court**
**Trial Court No. 23CR-253**

**Judgment Affirmed**

**Date of Decision:  February 3, 2025**

---

APPEARANCES:

    *April F. Campbell* **for Appellant**

    *Allison M. Kesler* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Russell J. Bertuzzi ("Bertuzzi") appeals the judgment of the Marion County Court of Common Pleas, arguing that the trial court erred by denying his presentence motion to withdraw his plea and that his convictions for aggravated robbery and burglary should have merged at sentencing. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On January 13, 2023, Bertuzzi broke into a house where Chris Crissinger ("Crissinger") and Amy Dunn were spending their evening. While wearing a mask and a knit cap, Bertuzzi pointed a revolver at Crissinger and ordered him to hand over any money or jewelry that they may have had. After Bertuzzi threatened to kill Crissinger, these two men got into a physical altercation.

{¶3} At some point, Bertuzzi struck Crissinger in the head with his gun before leaving the scene. However, he left behind his mask, cap, and gun. DNA recovered from these items was sent to the Ohio Bureau of Criminal Investigations for testing. The DNA from the cap was a match for Bertuzzi. "[T]he major DNA profile was rarer than one in one trillion." (Feb. 6 Tr. 6). Further, the firearm was tested and found to be operable.

{¶4} On June 21, 2023, Bertuzzi was indicted on two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), first-degree felonies, and two counts of

aggravated burglary in violation of R.C. 2911.11(A)(1), first-degree felonies. Each of these four charges carried a three-year firearm specification pursuant to R.C. 2941.145(A). On February 6, 2024, Bertuzzi pled guilty to one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony; one count of burglary in violation of R.C. 2911.12(A)(1), a second-degree felony; and one three-year firearm specification pursuant to R.C. 2941.145(A). The State then moved to dismiss the remaining charges.

{¶5} On March 5, 2024, Bertuzzi filed a motion to withdraw his guilty plea. After a hearing on March 11, 2024, the trial court denied this motion. At his sentencing hearing on March 15, 2024, Bertuzzi argued that his convictions for aggravated robbery and burglary should merge. However, the trial court concluded that these two convictions were not allied offenses of similar import. On March 19, 2024, the trial court issued its judgment entry of sentencing.

{¶6} Bertuzzi filed his notice of appeal on April 1, 2024. On appeal, he raises the following two assignments of error:

**First Assignment of Error**

**The trial court abused its discretion in denying Bertuzzi's presentence motion to withdraw his plea.**

**Second Assignment of Error**

**The trial court reversibly erred in not merging Bertuzzi's aggravated robbery and burglary offenses, because those offenses are allied.**

*First Assignment of Error*

**{¶7}** Bertuzzi argues that the trial court erred in denying his presentence motion to withdraw his guilty plea.

Legal Standard

**{¶8}** "Under Crim.R. 32.1, a defendant may make a motion to withdraw a guilty plea before his or her sentence is imposed." *State v. Wallace*, 2023-Ohio-3014, ¶ 27 (3d Dist.).

> 'A presentence motion to withdraw a guilty plea should be freely and liberally granted.' * * * A defendant does not, however, have an 'absolute right' to withdraw his or her plea, even when a motion to withdraw is made before sentencing.

*State v. Barnes*, 2022-Ohio-4486, ¶ 13, quoting *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). "Before ruling on a defendant's presentence motion to withdraw his plea, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawing the plea." *Barnes* at ¶ 13.

**{¶9}** On review, appellate courts have typically applied the following list of nine factors to evaluate a trial court's decision on a motion to withdraw a plea:

> (1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant by counsel; (3) the extent of the hearing held pursuant to Crim.R. 11; (4) the extent of the hearing on the motion to withdraw the plea; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges.

*State v. Bingham*, 2019-Ohio-3324, ¶ 42 (3d Dist.).[1] "None of the factors is determinative on its own and there may be numerous additional aspects 'weighed' in each case." *State v. North*, 2015-Ohio-720, ¶ 16 (3d Dist.).

**{¶10}** "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." *Xie* at paragraph two of the syllabus. For this reason, a trial court's ruling on a motion to withdraw a guilty plea will not be reversed in the absence of an abuse of discretion. *Id.* "An abuse of discretion is not merely an error of judgment." *State v. Sullivan*, 2017-Ohio-8937, ¶ 20 (3d Dist.). "Rather, an abuse of discretion is present where the trial court's decision was arbitrary, unreasonable, or capricious." *State v. Howton*, 2017-Ohio-4349, ¶ 23 (3d Dist.). Under this standard, an appellate court may not "substitute its judgment for that of the trial court." *State v. Richey*, 2021-Ohio-1461, ¶ 40 (3d Dist.).

Legal Analysis

**{¶11}** Bertuzzi argues that the nine-factor analysis weighs in favor of permitting him to withdraw his guilty plea. We turn to examining the trial court's decision to deny his motion to withdraw under these factors.

---

[1] In *State v. Barnes*, the Ohio Supreme Court stated that this nine-factor analysis does not apply where a defendant seeks to withdraw a guilty plea after becoming aware of new evidence that would have affected his decision to enter a plea. *Barnes*, 2022-Ohio-4486, ¶ 24. In *State v. Edwards*, this Court joined several of our sister appellate districts in concluding that the nine-factor analysis continues to apply outside of the narrow situation described in *Barnes*. *Edwards*, 2023-Ohio-3213, ¶ 8-9 (3d Dist.). Since Bertuzzi does not allege that he found new evidence, we will examine this case under the nine-factor analysis.

{¶12} *Whether withdrawal will prejudice the prosecution*: In its opposition to Bertuzzi's motion to withdraw, the prosecution indicated that the victim had moved to Florida and that the State had covered the transportation costs for the victim to come back to Ohio in time to testify as a witness at trial. Bertuzzi then agreed to plead guilty on the date of his trial. The prosecution noted that withdrawal of this plea would require the victim to return to Ohio a second time.

{¶13} *The representation afforded to the defendant by counsel*: During the course of this proceeding, Bertuzzi was represented by one attorney. At the change of plea hearing, Bertuzzi stated that he was satisfied with defense counsel's representation and had enough time to confer with his attorney about his plea. After describing the experience of defense counsel and his handling of this case in its judgement entry, the trial court found that Bertuzzi "was represented by competent counsel * * *." (Doc. 44).

{¶14} *The extent of the hearing held pursuant to Crim.R. 11*: At the change of plea hearing, the trial court conducted a Crim.R. 11 colloquy. In response to the trial court's questions, Bertuzzi indicated that he understood the rights that he was waiving and proceeded to enter a plea of guilty.

{¶15} *The extent of the hearing on the motion to withdraw the plea*: In this case, the trial court held a hearing on the motion and fully considered the arguments that were made by Bertuzzi. While the trial court gave Bertuzzi an opportunity to present evidence, he chose only to make a statement in support of his motion. While

the motion to withdraw asserted he had meritorious defenses, defense counsel admitted that, "[a]s far as the defense to the charges," there was "nothing new since the time of the plea." (Mar. 11 Tr. 3).

{¶16} *Whether the trial court gave full and fair consideration of the motion*: In its judgment entry denying Bertuzzi's motion to withdraw, the trial court engaged in a thorough analysis of the facts of this case. The trial court considered the arguments of both parties and fully explained the reasons for its decision.

{¶17} *Whether the timing of the motion was reasonable*: Bertuzzi made his motion prior to sentencing but almost one month after he entered his plea. Nonetheless, the trial court noted that the timing of this motion still gave "sufficient time * * * to conduct a separate and full hearing" on this matter. (Doc. 44).

{¶18} *The stated reasons for the motion*: In his motion to withdraw, Bertuzzi stated that he believed he had "meritorious defenses" to the charges. (Doc. 39). But the Defense did not present any evidence at the hearing on this motion that could substantiate this assertion. (Doc. 39). In fact, the defendant acknowledged that his DNA was found at the scene of the offenses. At the hearing on the motion to withdraw, Bertuzzi also stated that he had suffered a head injury three weeks before he pled guilty. He then stated, "I don't know if that had anything to do with it [pleading guilty]. I mean, it could have, might not have * * *." (Mar. 11 Tr. 4). In response, the trial court found that, having observed Bertuzzi at the plea hearing, he "clearly understood what he was doing." (Doc. 44).

**{¶19}** *Whether the defendant understood the nature of the charges and potential sentences*:  At the change of plea hearing on February 6, 2023, the trial court thoroughly explained the potential penalties that Bertuzzi faced.  The State also identified a letter that Bertuzzi wrote to the trial court on the date of his plea that addressed his upcoming sentencing.  This letter indicated that he had an awareness of the prison sentences that he could potentially receive.  Further, Bertuzzi's criminal record indicates that he had previously been convicted of burglary and aggravated robbery.  For this reason, the State noted that Bertuzzi would, therefore, be familiar with the charges against him in this case.

**{¶20}** *Whether the accused was perhaps not guilty or had a complete defense to the charges*:  In the letter that Bertuzzi authored on the date of his plea, he mentioned that he "was filled with regret and remorse for what [he had] * * * done." (Doc. 44, Ex. 1).  Thus, in its judgment entry, the trial court noted that this letter included "an apology for [his] * * * wrongdoing." (Doc. 44).  Further, Bertuzzi did not present any evidence at the hearing on the motion to withdraw that could substantiate his assertion that he had defenses to the charges against him.

**{¶21}** In this case, Bertuzzi did not provide the trial court with a reasonable and legitimate basis for his motion to withdraw his guilty plea.  Without more, "a 'change of heart' is not sufficient justification to withdraw a plea." *State v. Martre*, 2019-Ohio-2072, ¶ 12 (3d Dist.).  Having examined the evidence in the record under the applicable nine-factor analysis, we conclude that Bertuzzi has failed to

demonstrate that the trial court abused its discretion in denying his motion to withdraw his guilty plea. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

{¶22} Bertuzzi argues that his convictions for aggravated robbery and burglary should have merged at sentencing.

Legal Standard

{¶23} The Double Jeopardy Clauses in the United States Constitution and the Ohio Constitution "prohibit[] multiple punishments for the same offense." *State v. Underwood*, 2010-Ohio-1, ¶ 23. R.C. 2941.25 codifies these protections and reads as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Thus, R.C. 2941.25 requires a trial court "to merge allied offenses of similar import at sentencing." *Underwood* at ¶ 27.

{¶24} In determining "whether two offenses are * * * subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Ruff*, 2015-Ohio-995, ¶ 16, quoting *State v. Johnson*, 2010-Ohio-6314, syllabus.

> [A] defendant charged with multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

*Ruff* at ¶ 13. The defendant bears the burden of establishing that the identified convictions should merge at sentencing. *State v. Smith*, 2024-Ohio-886, ¶ 45 (3d Dist.).

**{¶25}** "Appellate courts generally apply a de novo standard of review in determining whether offenses are subject to merger under R.C. 2941.25." *State v. Dendinger*, 2023-Ohio-4255, ¶ 13 (3d Dist.). "Under a de novo standard, the appellate court conducts an independent review of the matter, giving no deference to the interpretation reached by the trial court." *State v. Stinebaugh*, 2024-Ohio-2677, ¶ 37 (3d Dist.).

Legal Analysis

**{¶26}** On appeal, Bertuzzi argues that the burglary was committed incidentally to the aggravated robbery and that these two convictions should have merged at sentencing. The statutory provision that defines burglary reads, in its relevant part, as follows:

> No person, by force, stealth, or deception shall * * * [t]resspass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense.

R.C. 2911.12(A)(1). The Ohio Supreme Court has held that

> [w]hether an intended [offense] was committed is irrelevant to the burglary charge. But where the intended [offense] is actually committed, a new crime arises for which the defendant may be convicted.

*State v. Pattson*, 2022-Ohio-150, ¶ 43 (2d Dist.), quoting *State v. Frazier*, 58 Ohio St.2d 253, 256 (1979).

**{¶27}** In turn, statutory provision that defines aggravated robbery reads, in its relevant part, as follows:

> No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

R.C. 2911.01(A)(1). Thus, a person can commit the crime of burglary by entering by force into an occupied house with the intention of perpetrating an offense, "and a robbery subsequently committed inside the home constitutes a new, separate offense." *State v. Terrel*, 2015-Ohio-4201, ¶ 24 (2d Dist.), quoting *State v. Kay*, 2014-Ohio-2676, ¶ 21 (2d Dist.).

**{¶28}** In this case, Bertuzzi committed acts that were sufficient to commit the offense of burglary by the time he entered Crissinger's house by force with a gun. Once inside the home, Bertuzzi then committed the conduct that gave rise to the offense of aggravated robbery by brandishing his firearm at Crissinger, using it to strike Crissinger in the head, and demanding he hand over various valuables.

These offenses were committed with separate conduct and visited different types of harm on the victim. *State v. Rice*, 2020-Ohio-4404, ¶ 25 (2d Dist.)

**{¶29}** Since these two offenses were committed with separate conduct, we conclude that the trial court did not err in determining that Bertuzzi's convictions for burglary and aggravated robbery did not merge at sentencing. *State v. Newett*, 2017-Ohio-7313, ¶ 15 (8th Dist.); *State v. Scott*, 2016-Ohio-682, ¶ 13-14 (9th Dist.); *State v. Long*, 2021-Ohio-2656, ¶ 58, 65 (10th Dist.). *See also State v. McAlpin*, 2022-Ohio-1567, ¶ 195. Accordingly, the second assignment of error is overruled.

*Conclusion*

**{¶30}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Marion County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

**/hls**